UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Elizabeth M. Torpey,

    Plaintiff,

    v.                                                   Civil Action No. 1:13-cv-265

Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 7, 10)

Plaintiff Elizabeth Torpey brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.  Pending before the Court are Torpey's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm the same (Doc. 10).  For the reasons stated below, I recommend that Torpey's motion be DENIED, and the Commissioner's motion be GRANTED.

## Background

Torpey was 48 years old on her alleged disability onset date of March 1, 2009. She attended college and has a bachelor-of-science degree in biology.  (AR 422.)  She has work experience as a research scientist for the New Jersey Department of Environmental Protection, an environmental health and safety compliance manager, a

teacher at Community College of Vermont ("CCV"), an enumerator for the United States census, and a retail clerk for an herbalist. (AR 30–31, 194.) She is single and lives on her own.

Torpey has a history of right lateral epicondylitis[1] which causes pain in her right arm, elbow, and hand. (AR 31.) She has attempted to manage this condition through conservative treatment including steroid injections and physical therapy, but still has elbow dysfunction and pain. She also suffers from pain in her neck, knees, hips, heels, feet, and toes; and she has been diagnosed with fibromyalgia. (AR 31–32, 49, 318, 465, 539.) She testified that she is unable to sit or stand for extended periods and always has pain somewhere in her body. (AR 32, 42, 49.) Torpey also has diabetes mellitus and alcoholic liver disease due to past alcohol abuse. (AR 296, 337.) Prior to 2005 when she stopped using alcohol, she had been diagnosed with acute alcoholic hepatitis and had undergone alcohol detoxification six times. (AR 296, 422.) On a typical day, Torpey works on the computer, shops for groceries, cleans her house, prepares her meals, reads, walks her dog, and attends Alcoholics Anonymous meetings. (AR 34.) Additionally, beginning in approximately January 2011, she taught a four-credit course at CCV. (AR 212, 220, 224–25.)

---

[1] "Epicondylitis," otherwise known as "tennis elbow," is "an inflammation of the humerus (upper arm bone) at the lateral epicondyle—on the outside portion of the elbow." 8 *Attorneys Medical Advisor* § 72:10 (Mar. 2013), available at Westlaw MEDADV. Pain "usually develops gradually. Point tenderness may be present and is aggravated when the extensor muscles of the wrist are stretched. There is minimal local swelling and full range of motion at the elbow[, but] [s]ymptoms may progress to the point where picking up a coffee cup or turning a door knob are difficult." *Id.* (citation omitted).

On October 4, 2010, Torpey filed an application for disability insurance benefits. Therein, she alleged that, starting on March 1, 2009, she has been unable to work due to an inability to use her right elbow and arm, neuropathy, depression[2], and fibromyalgia. (AR 32, 171.)  She has stated that her right arm/elbow/hand pain is her most disabling impairment, and the principal reason she applied for disability.  (AR 31–32, 422.) Torpey's application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  The hearing was held on March 12, 2012 by Administrative Law Judge ("ALJ") Thomas Merrill.  (AR 27–61.)  Torpey appeared and testified, and was represented by an attorney.  A vocational expert ("VE") also testified at the hearing.  On May 10, 2012, the ALJ issued a decision finding that Torpey was not disabled under the Social Security Act from her alleged onset date of March 1, 2009 through the date of the decision.  (AR 12–21.)  Thereafter, the Appeals Council denied Torpey's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted her administrative remedies, Torpey filed the Complaint in this action on September 30, 2013.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

---

[2] Despite alleging in her application that depression contributed to her inability to work (AR 171), Torpey does not challenge the ALJ's decision that she has no severe mental impairments (AR 15–16; *see also* AR 422 ("I don't have any mental health issues.").)  Therefore, I limit my analysis to Torpey's physical impairments.

3

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

4

Employing this sequential analysis, ALJ Merrill first determined that Torpey had not engaged in substantial gainful activity since her alleged onset date of March 1, 2009. (AR 14.) At step two, the ALJ found that Torpey had the following severe impairments: "right lateral epicondylitis, status post left tibial plateau comminuted fracture open reduction internal fixation,[3] chronic liver disease, [and] [d]iabetes [m]ellitus." (AR 15.) Conversely, the ALJ found that Torpey's fibromyalgia and depression were nonsevere. (AR 15–16.) At step three, the ALJ found that none of Torpey's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 16–17.) Next, the ALJ determined that Torpey had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Torpey] can push and pull, reach overhead, and perform gross manipulation with the right upper extremity on an occasional basis. She can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, frequently balance, stoop on an unlimited basis, frequently kneel, and frequently crouch. [She] should avoid concentrated exposure to vibration and workplace hazards.

(AR 17.) Given this RFC, and considering testimony from the VE, the ALJ found that Torpey was capable of performing her past relevant work as a retail clerk, appliance officer, census enumerator, research scientist, and college teacher. (AR 21.) The ALJ concluded that Torpey had not been under a disability from the alleged onset date of March 1, 2009 through the date of the decision. (*Id.*)

---

[3] Here, the ALJ is referencing Torpey's left knee surgery which she underwent in approximately February 2008 after injuring her knee in a ski accident. (AR 267, 283–86.)

5

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Torpey contends the ALJ erred in his analysis of the medical opinions and should not have relied on the opinions of agency consultant Dr. Patricia Pisanelli over those of treating physician Dr. Denise Niemira.  (Doc. 7-1 at 3–4, 13–17.)  Moreover, Torpey claims the ALJ's assessment of Torpey's credibility is not supported by substantial evidence.  (*Id.* at 18–20.)  The Commissioner disagrees, asserting that the ALJ's decision complies with the applicable legal standards and is supported by substantial evidence.  For the following reasons, I find Torpey's arguments unpersuasive and recommend finding in favor of the Commissioner.

**I.    The ALJ's analysis of the medical opinions was proper.**

Dr. Niemira has been Torpey's treating primary care physician since approximately January 2009 (AR 250, 320), treating Torpey's epicondylitis, knee pain, fibromyalgia, diabetes, and cirrhosis, among other things, and referring Torpey to specialists and other providers, including orthopedists and physical therapists, to assist in treating these and other problems.  (*See, e.g.*, AR 318–20, 332, 348, 355–56, 465, 539.)  In January 2011, Dr. Niemira completed a Medical Assessment of Ability to Do Work-Related Activities (Physical), wherein she opined that Torpey was substantially restricted in her ability to work.  (AR 518–20.)  Specifically, Dr. Niemira opined that Torpey could lift/carry only less than five pounds and was significantly limited in her ability to perform

all postural activities and to push, pull, and engage in handling and fingering activities. (AR 518–19.) Dr. Niemira further opined that Torpey's neuropathy and fibromyalgia "may flare with environmental factors," and that her pain "varie[d] in intensity," possibly interfering with her ability to focus and concentrate. (AR 520.)

Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993). The opinion of a treating physician is not afforded controlling weight, however, where the opinion is not consistent with other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). An ALJ who opts against affording controlling weight to a treating physician's opinion must consider various regulatory factors to determine how much weight to give that opinion. 20 C.F.R. § 404.1527(c). These factors include the length of the treatment relationship, the frequency of examination, the physician's area of specialty, whether the opinion is supported, and whether the opinion is consistent with the record as a whole. *Id.*; *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). Additionally, the ALJ must also "give good reasons" for the weight afforded to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *see Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998).

Here, principally considering the factors of supportability and consistency with the record, the ALJ afforded "only some weight" to Dr. Niemira's opinions, explaining that these opinions are "not entirely consistent with or supported by the evidence of record," including Torpey's activities of daily living.  (AR 20.)  The ALJ correctly stated that Dr. Niemira "base[d] much of her opinion[s]" on September 2011 physical therapy notes which found that Torpey could lift no more than five pounds.  (*Id.* (citing AR 491); *see* AR 518–19.)  As the ALJ noted, however, it is unclear whether this finding in the physical therapy notes was based on Torpey's subjective opinion or objective examination and testing.  (AR 20, 491.)  In February 2012, only approximately five months after the September 2011 physical therapy notes were prepared, Dartmouth-Hitchcock Medical Center treatment notes record physical examination findings of "appropriate" ("5/5") muscle strength in the upper extremities and full range of motion in the elbows.  (AR 566.)  Those February 2012 notes also indicate that, most of the time, Torpey was able to go shopping, do the laundry, prepare meals, wash dishes, vacuum, make beds, and walk several blocks.  (AR 565; *see also* AR 188–89 (Torpey stating in October 2010 Function Report that she prepares her own meals, does household chores, and goes outside and shops on a daily basis).)  As the ALJ stated, the September 2011 physical therapy notes are inconsistent with Torpey's activities of daily living which indicate that she lifts greater than five pounds on a regular basis, doing activities like those listed in the February 2012 notes, as well as kayaking and shoveling snow,

referenced in other treatment notes.[4]  (AR 18–20; *see* AR 34, 188–90, 316 ("elbow pain . . . worse [with] kayaking"), 365 (listing "kayaking" as an activity causing an increase in elbow pain), 452 (doing "a lot more preparation and cleanup for family" over holidays), 457 ("concerned that if she has surgery [to address epicondylitis] she would not be able to do any shoveling"), 565.)

After careful review of the record, I find that the ALJ properly applied the treating physician rule and gave good reasons, supported by substantial evidence, for his decision to afford "only some weight" to Dr. Niemira's opinions.  Also noteworthy, Dr. Niemira herself had difficulty assessing multiple areas relevant to determining Torpey's physical limitations.  In response to the question "how many hours in an 8[-]hour day can [Torpey] sit with feet down in a straight-backed chair," Dr. Niemira stated: "difficult to assess" (AR 518), leaving a blank space next to a request to state what "medical findings . . . support th[at] assessment" (AR 519).  Likewise, in response to a question posing how many work days each month Torpey "would be expected to miss . . . due to her impairments," Dr. Niemira stated: "unable to predict."  (AR 520.)

While the ALJ gave limited weight to the opinions of Dr. Niemira, he gave "great weight" to agency consultant Dr. Pisanelli's opinion that Torpey retained the capacity to perform a limited range of light work.  (AR 20; *see* AR 80–82.)  The ALJ explained that

---

[4] Also relevant, although not mentioned in the ALJ's decision, physical therapy notes do not carry the same weight as treating physician notes, given that physical therapists are defined in the regulations as "other sources" rather than "acceptable medical sources."  20 C.F.R. § 404.1513(a), (d)(1). ALJs are not required to evaluate the opinions of "other sources" in the same manner as required under the treating physician rule.  *See* 20 C.F.R. § 404.1527(d)(2); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

10

Dr. Pisanelli's opinions are supported both by objective medical evidence and Torpey's reported daily activities. (AR 20–21.) Although in general, the opinions of nonexamining consulting physicians such as Dr. Pisanelli have less value than the opinions of examining physicians such as Dr. Niemira, the regulations do not require that more weight be given to the opinions of examining physicians in every case: the opinions of nonexamining agency consultants may override those of examining or treating physicians when the former are supported by the record and the latter are not. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.") (citation omitted); 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Here, for the reasons discussed above, I find that Dr. Niemira's opinions are not supported by the record. In contrast, substantial evidence, including Torpey's medical records and daily activities, support Dr. Pisanelli's opinions. (*See, e.g.*, AR 452 ("overall the [elbow] pain is subsiding"), 454 ("She is actually doing quite well.") (normal gait, good strength and mobility, negative results on straight leg raising, normal x-ray of knee), 457 (considering "potential new job" and applying for unemployment, "concerned that if she has surgery she would not be able to do any

11

shoveling"), 564 (walks dog for one mile daily), 565 (able to shop, prepare meals, and do household chores).)

Torpey argues that the ALJ should not have relied on Dr. Pisanelli's opinions because she did not have the chance to review all the evidence in the record, including Dr. Niemira's opinions and the 2011 physical therapy notes relied on therein. (Doc. 7-1 at 15.)  As discussed above, however, those physical therapy notes have little value, given that (1) they do not indicate whether they were based on Torpey's subjective opinion or objective examination and testing, and (2) they are inconsistent with other evidence, including Torpey's daily activities. (AR 20, 491.)  Torpey also points to July 2011 treatment notes from Mansfield Orthopaedics, which state that Torpey's epicondylitis symptoms were not improving with conservative interventions. (Doc. 7-1 at 15; *see* AR 485.)  Those notes, however, also indicate that Torpey was having only "a little of pain and inability to use her arms normally," not the severe pain and extensive limitations contained in Dr. Niemira's opinions. (AR 485.)  Moreover, the July 2011 Mansfield Orthopaedics notes state that surgery was the "logical next option" and hopefully would occur soon because Torpey was planning to return to her job teaching at CCV approximately two months later. (*Id.*)  Torpey did end up returning to that job (AR 212, 220, 224–25), but opted against having surgery (AR 494 ("She was scheduled for surgery and then canceled it because she is not sure [she] wants it.")).

Generally, in cases where a consulting physician has not reviewed all of the claimant's relevant medical information, her opinions will not override those of the treating physician. *See Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011).  But where

12

the consultant's opinions are supported by the record and there is no evidence of a new diagnosis or a worsening of the claimant's condition after the opinions were made, the ALJ may rely on them. *See Charbonneau v. Astrue*, No. 2:11-CV-9, 2012 WL 287561, at *7 (D. Vt. Jan. 31, 2012). Here, as noted above and in the ALJ's decision, Dr. Pisanelli's opinions are supported by the record, and the record does not indicate a substantial worsening of Torpey's condition after they were made. Moreover, Dr. Niemira's opinions are the only medical opinions containing limitations more severe than the ALJ assessed in his RFC determination, and they were properly discounted for the reasons discussed above. Thus, it was not improper for the ALJ to rely on Dr. Pisanelli's opinions.

Torpey asserts that the ALJ should have recontacted Dr. Niemira to clarify her opinions. (Doc. 7-1 at 20–21.) This argument fails. Although an ALJ has an affirmative duty to develop the administrative record, "where there are no obvious gaps . . . , and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted). Here, there are no obvious gaps in the record, and the record contains Torpey's complete medical history, including the treatment records of multiple providers.[5]

---

[5] Torpey's argument regarding the language used by the ALJ to describe the weight afforded to Dr. Niemira's opinions ("only some weight") (AR 20) also fails, as does Torpey's claim that the ALJ "ma[de] a mistake" in interpreting Dr. Niemira's opinions. (Doc. 7-1 at 14–15.) The ALJ was under no obligation to adopt the specific limitations identified in Dr. Niemira's opinions, given that his decision to afford limited weight to those opinions is supported by substantial evidence and legally proper, as discussed above.

13

## II.     The ALJ's credibility assessment is supported by substantial evidence.

Torpey also argues that the ALJ erred in his credibility assessment. (Doc. 7-1 at 18–20.) The ALJ found that Torpey's statements concerning the intensity, persistence, and limiting effects of her symptoms are "not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (AR 18.) The ALJ further explained: "Although [Torpey] has alleged a number of limitations that, if fully credible, would warrant greater limitations [than contained in the RFC determination], her allegations are not fully supported by the evidence of record, particularly her reported activities of daily living." (*Id.*)

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). When evaluating the credibility of a claimant's statements, the ALJ "must consider the entire case record and give specific reasons for the weight given [thereto]." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). If the ALJ's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints, even if substantial evidence supporting the claimant's position also exists. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

Here, the ALJ gave several specific reasons in support of his assessment of Torpey's credibility. First, the ALJ found that the medical evidence of record does not support a finding that Torpey is as severely restricted as she alleges. (AR 18.) For

14

example, regarding Torpey's knee impairment, the ALJ correctly noted that her knee examinations showed mostly normal objective findings. (AR 19; *see* AR 452, 454, 455, 484.) Regarding Torpey's fibromyalgia, the ALJ noted that no tender points were identified on examination in February 2012. (AR 15; *see* AR 568.) The relevant treatment note states: "No tender points on exam" (AR 567); "absence attributed to ongoing/efficacy of treatment (Cymbalta)" (AR 568). Second, as discussed above, the ALJ found that Torpey's daily activities did not support the level of limitation alleged by Torpey, particularly regarding her right elbow/arm impairment. These activities included shopping, preparing meals, doing household chores, driving a car, shoveling snow, kayaking, going up and down stairs, and walking her dog one mile daily. (AR 19–20; *see, e.g.*, AR 365, 452, 494, 564, 565.) It is well established that an ALJ may consider a claimant's daily activities in assessing the claimant's credibility. *See, e.g.*, *Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)). Thus, although Torpey's activities may not be described as robust, it was proper for the ALJ to consider them—together with the rest of the record—in assessing Torpey's credibility.

Third, the ALJ found that Torpey "has not been fully compliant with treatment" (AR 18 (citing AR 330, 360, 457)), another proper factor for ALJs to consider in assessing a claimant's credibility, *see Calabrese*, at 277–78; 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled."). Moreover, despite Torpey's argument to the contrary, the record supports the ALJ's finding that Torpey was not always compliant with the treatment recommendations of her medical providers. In a December 2009 treatment note recommending steroid

15

injections to address her elbow pain, physical therapist Anthony Tomaselli stated that Torpey "has been essentially non-compliant with home exercise program and instruction in self-correcting postural maladies which physical therapist believes is driving her [right] elbow pathology." (AR 348.) Likewise, August 2010 treatment notes from Mansfield Orthopaedics state that Torpey "has stopped wearing her counterforce brace [on her arm] and really stopped doing all of the conservative measures that we talked about since she has been doing well." (AR 330.) In the same month, physical therapy services were discontinued "[secondary] to loss of contact [with Torpey]." (AR 360.) October 2010 notes from Mansfield Orthopaedics indicate that there were potential valid reasons for Torpey's failure to attend physical therapy (no more insurance coverage) and that she had started using the arm brace again. (AR 457.) Still, the ALJ was entitled to consider these facts, among several others, in assessing Torpey's credibility.

The ALJ also considered that Torpey opted against having surgery on her elbow/arm, reasoning that, "[i]f [Torpey's] condition were as severe as she alleged, . . . she would follow through with . . . treatment recommendation[s]," including surgery on her elbow/arm. (AR 18.) The ALJ explained:

> [Torpey] did not want to go through with surgery . . . , as she had a potential new job lined up, she was considering applying for unemployment benefits, and she was concerned that if she had surgery, she would not be able to shovel snow during the winter. *Her reluctance to have surgery, and her reasons behind this, are notable for several reasons.* If she had a job lined up, this suggests that [she] felt herself capable of working, even with her pain. Similarly, applying for unemployment benefits requires the applicant to hold herself out as ready, able, and willing to work, which is not consistent with [Torpey's] claim for disability. Additionally, [Torpey] did not want to have surgery in order to preserve her ability to shovel snow that winter, as she lives alone. That [she] shovels her own snow is

16

>  inconsistent with her allegations of an inability to use her right upper extremity for tasks involving lifting, carrying, pushing, and pulling.

(AR 18–19 (emphasis added) (citation omitted).)  It was proper for the ALJ to consider Torpey's reluctance to have surgery—and the reasons she provided to her medical providers for that reluctance—in assessing her credibility.  *See* 20 C.F.R. § 404.1529(c)(3)(iv) and (v); SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996) ("the [claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").

In sum, the ALJ clearly stated in the decision his reasons for discrediting Torpey's allegations of disabling pain.  There is substantial evidence in the record to support these reasons.  Although the ALJ was "required to take [Torpey's] reports of pain and other limitations into account," he was "not required to accept [Torpey's] subjective complaints without question."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).  Rather, the ALJ had discretion to weigh the credibility of Torpey's allegations "in light of the other evidence in the record."  *Id.*  While another factfinder could view the evidence in a light more favorable to Torpey, the court may not substitute its own credibility determination for that of the ALJ's unless the latter was "patently unreasonable."  *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997); *see Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (finding "no reason to

second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling").

## Conclusion

For these reasons, I recommend that Torpey's motion (Doc. 7) be DENIED, the Commissioner's motion (Doc. 10) be GRANTED, and the decision of the Commissioner be AFFIRMED.

Dated at Burlington, in the District of Vermont, this 12th day of September, 2014

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).